UNITES STATES DISTRICT COURT
MIDDLE DITRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No.:

LAVERNE HAMPTON, GEORGE
PEARSON, SR., and TAELYN
PEARSON,

    Defendants.

## COMPLAINT

Plaintiff, the United States of America, brings this complaint for partition of real property against Defendants, Laverne Hampton, George Pearson, Sr., and Taelyn Pearson, and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action to partition the following real property equally owned by the United States and Defendant Laverne Hampton. The real property is indivisible and is not subject to partition without prejudice to its owners. The property is:

> The real property located at 1576 South Greenwood Avenue, Clearwater, Florida, 33756 a/k/a 1576 South Martin Luther King Jr. Avenue, Clearwater, Florida, 33756, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

> Lots 13 and 14, Block F, Second Addition to Belmont, according to the map or plat thereof as recorded in Plat Book 6, Page 88, Public Records of Pinellas County, Florida.

(the "Property").

2. Defendants George Pearson, Sr. and Taelyn Pearson may reside at the Property, and thus may claim an interest in the Property.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States.

4. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1399, because the Property is located within the district.

## STATEMENT OF FACTS

5. This is an action for the partition of real property located in the Middle District of Florida.

6. On May 3, 2005, this Court entered a Final Order of Forfeiture as to the Property in Case Number 8:03-cv-2731-T-30SPF, holding that the United States owns a one-half interest with Laverne Hampton. The Order forfeited George Pearson, Sr.'s one-half interest in the Property to the United States based upon the fact that he allowed controlled substances to be sold at the Property, in violation of 21 U.S.C. § 841, as set forth below:

a. In November 1997, a search warrant was executed at the Property based upon probable cause developed during a narcotics investigation in which multiple purchases of crack cocaine were made at the Property by undercover officers. George Pearson, Sr. was present at the execution of that search warrant. Officers seized approximately 24 grams of crack cocaine, $1,200 in U.S. currency, and six firearms.

b. In December 2002, a confidential informant told law enforcement officers that drugs were being made and sold at the Property. During the course of the investigation, George Jeremy Pearson and Terrell Wright sold crack cocaine and cocaine to undercover detectives at the Property on multiple occasions.

c. On February 21, 2003, law enforcement executed a search warrant at the Property and seized a total of 60.3 grams of crack cocaine, 162.9 grams of powder cocaine, 48.8 grams of marijuana, and drug paraphernalia. A portion of the drugs found were packaged in smaller amounts ready for sale. During the execution of the search warrant, law enforcement interviewed George Pearson, Sr., who claimed he was the owner of Property. Pearson, Sr. admitted that neighbors told

him there was a lot of traffic regularly occurring there. He also admitted that he suspected drugs were being sold at the Property.

d. On August 13, 2003, George Jeremy Pearson, Gerald Wright, and Terrell Wright were indicted for conspiracy with intent to distribute cocaine and possession with intent to distribute crack cocaine in Case Number 8:03-cr-343-T-30MSS. On November 17, 2003, George Jeremy Pearson and Terrell Wright pled guilty to the conspiracy and possession of cocaine charges. Gerald Wright was found guilty of the conspiracy and possession of cocaine charges after a trial.

e. Because the Property was used to distribute controlled substances in violation of 21 U.S.C. § 841, in December 2003, the United States filed a civil forfeiture complaint against the Property.

f. Laverne Hampton and George Pearson, Sr., co-owners of the Property, filed claims alleging their interest in the property.

g. At her deposition, Hampton testified that she never lived at the Property, but instead resided in Philadelphia, and that her only real contribution toward the Property was providing money for a down payment and on one other occasion giving

Pearson, Sr. some money. She also testified that the agreement with Pearson, Sr. was that he would be responsible for all mortgage payments.

    h. At a bench trial in March 2005, Pearson, Sr. and Hampton asserted that they were innocent owners and entitled to keep their interest in the property. The Court ruled that Pearson, Sr. was not an innocent owner because "he was fully aware of the illegal drug activity taking place on the premises" and "did nothing to terminate such illegal use of the Property." The Court therefore ordered Pearson, Sr.'s fifty-percent interest in the Property to be forfeited to the United States. However, the Court ruled that Hampton was an innocent owner, and vested title in the United States and Hampton as tenants in common. A copy of the Order of Forfeiture dated May 3, 2005 is attached as Exhibit A.

7. In 2013, Terrell Wright was again arrested for the distribution of controlled substances at the Property. He was convicted of two counts of distribution of marijuana, and was sentenced to three years of supervised release. *See* Case No. 8:13-cr-135-T-26TGW.

8. In late 2019, law enforcement went to the Property. Despite the United States retaining a one-half interest in the Property, Hampton, Pearson, Sr. denied the officers access to enter and inspect the Property.

9. During the investigation, Pearson, Sr. confirmed that he lived at the Property with his grandson, who is believed to be Taelyn Pearson.

10. Despite not actually living at the Property, public records show that Hampton applied for and obtained Homestead Exemption on the Property.

11. Since 2005, at various times, the United States has attempted to terminate its co-ownership of the Property by consenting to the foreclosure by the mortgage company or reaching an agreement with Hampton. Earlier this year, the United States explained to Hampton's then-counsel that, to avoid further litigation, the United States would be willing to sell its interest in the Property to Hampton or sell the Property and split the proceeds. However, before withdrawing as her counsel, Hampton's counsel advised the United States that Hampton was not interested in either option.

12. The mortgage on the Property has been satisfied. There are no recorded liens or encumbrances on the Property, and the United States has no knowledge of any parties who claim a legal interest in the Property or who will be materially affected by this action other than the United States and the Defendants.

## PARTITION OF REAL PROPERTY
## CHAPTER 64, FLORIDA STATUTES

13. The United States incorporates by reference paragraphs 1- 12 as if fully set forth herein.

14. The United States has a right to maintain this action for partition because it is a co-owner of the Property and is therefore entitled to its proportionate share of the Property or its value in order to enjoy and dispose of the Property.

15. Laverne Hampton also owns one-half interest in the Property. However, she has never lived at the Property for any significant amount of time and it has never been her primary residence, despite her application and subsequent grant of Homestead Exemption. She lived at locations other than the Property, and as recently as July 2018, maintained an informal lease agreement for an apartment in Clearwater, Florida. Since 2005, Hampton's only connection to the Property is allowing Pearson, Sr., and at times Terrell Wright, to continue living there, despite knowing that criminal activity continued to occur.

16. This current ownership status of the Property is prejudicial to the United States. Hampton continues to allow Pearson, Sr. to reside on the Property; Pearson, in turn, allows others to stay there, with or without Hampton's knowledge. As a result, additional criminal activity has occurred there.

17. The United States and Hampton have been unable to agree to an equitable division of the Property or a course of action to market and sell the Property. Therefore, the United States is unable to sell, transfer, or convey its interest in the Property without a partition action.

18. The prosecution of this partition action is for the common benefit of the United States and the Defendants. A private sale of the Property under section 64.061(4), Florida Statutes, would not be prejudicial to the interests of Defendants. To the contrary, it is likely to result in a higher sale price.

19. Pursuant to section 64.081, Florida Statutes, every party shall be bound by the partition judgment to pay a share of the cost and attorney's fees, and at a sale, the court may order the costs and fees to be paid or retained out of the moneys arising from the sale and from the parties, who ought to pay the same. All taxes, state, county, and municipal, due at the time of the sale, shall be paid out of the purchase money.

Wherefore, Plaintiff, United States of America, pursuant to Chapter 64, Florida Statutes, requests the Court to enter a judgment:

A. Granting the United States' Motion for Partition and ordering an accounting of monies due, factoring into the partition the other certain sums of money owed to the United States by the Defendants for rents, repairs, improvements, taxes, costs, attorney's fees, and expenses paid by the United States on the Defendants' share of the

Property, and quieting title to their respective shares against all other parties and persons;

B. Finding that the Property sought to be partitioned is indivisible and not subject to partition without prejudice to the owners of it;

C. Ordering the sale of the Property at a private sale with the net proceeds divided, and factoring into the division of proceeds the other certain sums of money owed to the United States by the Defendants for repairs, improvements, taxes, costs, attorney's fees, and expenses paid by the United States on the Defendants' share of the Property;

D. Ordering the costs, taxes, and attorney's fees be paid pursuant to section 64.081, Florida Statutes;

E. Ejecting all current occupants; and

F. Granting such further relief as the Court may deem just and equitable.

Dated: August 24th, 2020

Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: /s/ Jessica N. Reder
JESSICA N. REDER
Special Assistant United States Attorney
Florida Bar No. 103316
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Email: Jessica.Reder@usdoj.gov